PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 4:23-CR-344 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TONY DAVIS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 29] |

Pending before the Court is Defendant Tony Davis's Motion to Suppress (ECF No. 29). The Government filed a Response (ECF No. 32).[1] The Court, having considered the parties' filings and applicable law, as well as the evidence and argument presented at the evidentiary hearing held on April 2, 2024, denies Defendant's motion.

## I. Background

Just before 11 p.m. on a Tuesday evening, Defendant was driving a bullet-riddled Dodge Ram pickup truck. The truck was unregistered; therefore, it was being illegally driven. Its registration had expired *three years* earlier. No one could legally drive that unregistered truck on Youngstown City Streets, including and especially Defendant whose driver's license had been forfeited for even longer than the truck's registration had been expired. To avoid the patrol officer who (would later testify that he) had noticed that two of the truck's three brake lights were

---

[1] Defendant filed a reply to the Government's response adding additional arguments (ECF No. 34). Accordingly, the Court allowed the Government to respond to the reply (ECF No. 40) and summarize its arguments, and accorded Defendant an opportunity to reply to the Government's response (ECF No. 42).

(4:23-CR-344)

out, Defendant quickly pulled the truck into the single-lane driveway of a house with which neither he nor the truck had a connection. Ultimately, those circumstances made at least two things clear to the officer, the truck had to be moved and it could not be driven. The only reasonable solution was to tow the truck. Before towing the truck, Youngstown Police Department's ("YPD") policy required that it be administratively searched. The search revealed a loaded .45 caliber handgun hidden in a compartment behind the driver's seat. That discovery helped to explain Defendant's evasive driving maneuvers, furtive movements, nervousness, and the loud clang the police officer heard coming from inside the truck. Against this backdrop, Defendant claims the traffic stop was without probable cause, the search of the truck prior to the announcement of his arrest was illegal, and his DNA was illegally obtained. He is mistaken.

A grand jury returned a three-count indictment charging Defendant with two counts of being a felon in possession of a firearm and ammunition in Counts One and Three, and one count of possessing an unregistered firearm in Count Two. *See* ECF No. 1. Only the firearm and ammunition charged in Count Three are the subject of Defendant's motion to suppress.

**II.     Standard of Review**

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Lange v. California,* 141 S. Ct. 2011, 2017 (2021). An automobile stop is subjected to the constitutional restraint of reasonableness. *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). Probable cause requires less than prima facie proof but more than mere suspicion. *United States v.*

2

(4:23-CR-344)

Jackson ,470 F.3d 299, 306 (6th Cir. 2006). To determine if an officer possessed probable cause that a motorist committed a traffic violation, the court must find that the officer knew or reasonably believed the motorist committed a violation of the law. United States v. Hughes, 606 F.3d 311, 316 (6th Cir. 2010). When a traffic stop is supported by probable cause, subjective intent is irrelevant. Whren v. United States, 517 U.S. 806, 813 (1996).

### III.     Discussion

1. **Probable Cause for the Traffic Stop**

Defendant argues that the officer had no probable cause to conduct a traffic stop. ECF No. 29 at PageID #: 89. He contends that while the officer claims Defendant's vehicle's brake lights were not working, the Government lacks evidence supporting this allegation. ECF No. 29 at PageID #: 89. The Government responds that Officer Short had probable cause to initiate the stop because he had an unobstructed view of Defendant's brake lights or absence thereof, on the night in question. ECF No. 32 at PageID #: 104.

During the Suppression Hearing, Officer Short testified that he first encountered Defendant's black Dodge truck while the officer was parked at the stop sign on East Laclede Avenue, facing South Avenue. Officer Short, still stationary at the stop sign and keeping an eye on Defendant through his mirror, watched Defendant drive down East Laclede and stop at the intersection of Rush Boulevard and East Laclede. Officer Short testified that was the first time he noticed Defendant's inoperable brake lights. Officer Short then observed Defendant continue driving down East Laclede and again noticed Defendant's missing brake lights as Defendant neared the intersection of East Laclede and Erie Street. Then Officer Short turned right onto South Avenue, driving towards East Indianola Avenue. After Officer Short turned onto East Indianola, he noticed Defendant's black Dodge truck drive by him. Officer Short testified he

3

(4:23-CR-344)

recognized this to be the same truck, not only because was it the same color and same make, but this truck also had custom rims and a spoiler.

Having decided to initiate a traffic stop, Officer Short made a U-turn at the intersection of East Indianola and Erie Street.  After completing the U-turn, Officer Short turned on his patrol car's lights.  Defendant turned onto Rush Boulevard and pulled into the driveway of one of the first houses on Rush.  Officer Short, for a third and final time during this sequence of events, observed Defendant's missing brake lights.  Officer Short then began the interaction with Defendant and explained that he was being pulled over due to his missing brake lights.

Officer Short's credibility is central to a finding of probable cause, and "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."[2] *United States v. Blair,* 524 F.3d 740, 749 (6th Cir. 2008) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985)).  Officer Short testified that he saw Defendant's missing brake lights three times.  Officer Short's body camera footage supports his testimony that he witnessed Defendant's brake lights not working properly.  And the officer's body camera video captures him explaining to Defendant, as he approached the truck, "the reason I'm stopping you, I'm not sure if you're aware, you only got one working brake light on the truck."[3]  Later, Officer Short shared his observations of Defendant's truck with another officer.[4]

---

[2] Defendant challenges Officer Short's testimony that Officer Short intended to stop Defendant after observing his broken brake lights.  This argument is wholly unsupported by Officer Short's testimony, the remainder of the record; and legally irrelevant as indicated above.

[3] *See* Officer Short's Body Camera Footage at 1:30.  Defendant's one working brake light was above the top back window of the truck.  The two tail-brake lights were not working.

[4] *See* Officer Short Body Camera Footage at 4:17 (featuring how Officer Short observed Defendant's truck).

4

(4:23-CR-344)

The Court finds Officer Short's testimony credible. Moreover, the Court finds that Officer Short's testimony, in concert with the video evidence and map of the relevant area presented as evidence, effectively establish probable cause to find that Defendant had committed a traffic violation before being stopped by Officer Short. In other words, the traffic stop did not violate the Fourth Amendment.

### 2. Inventory Search

Defendant argues that police failed to conduct a lawful inventory search because the search occurred prior to Defendant's arrest and was not conducted pursuant to standardized criteria, making it a ruse for a general rummaging to discover incriminating evidence. ECF No. 34 at PageID #: 109-110. The Government contends that the inventory search of Defendant's car was objectively justifiable.[5] ECF No. 40 at PageID #: 177.

The Fourth Amendment allows officers to conduct an inventory search before towing a vehicle. *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007). To lawfully constitute a valid inventory search, (1) police must lawfully take control of the vehicle; (2) the search must be conducted in accordance with standardized criteria or established routine; and (3) the inventory search policy must be reasonable and cannot provide officers with unlimited discretion. *Id*. at 651; *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007).

### A. Control of the Vehicle

---

[5] The Government also argues, in the alternative, that there was probable cause to search Defendant's car. ECF No. 40 at PageID #: 180. That argument is supported by the record, but for judicial economy and expediency, the Court need not expound on it because the legality of the traffic stop and subsequent inventory search are sound, and trial commences in less than 10 days.

5

(4:23-CR-344)

An inventory search is permissible only if the vehicle has been lawfully seized and impounded.  *United States v. Snoddy*, 976 F.3d 630 (6th Cir. 2020).  An officer's use of discretion to impound a vehicle must be made "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."  *Id.* (quoting *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012)).  Impoundment decisions are consistent with the Fourth Amendment if they are objectively justifiable, regardless of an officer's subjective intent.  *United States v. Ferguson*, No. 22-2151, 2024 WL 1093723 (6th Cir. Mar. 13, 2024) (citing *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001)).

In *United States v. Jackson*, defendants argued the decision to tow the vehicle was unreasonable, but the Sixth Circuit held that defendants were not lawful drivers, neither man had a connection to the residence the car was parked at, leaving no reasonable alternative but to tow the car.  682 F.3d 454-455.  The Sixth Circuit has found an officer's decision to impound a vehicle to be reasonable under the circumstances in other cases, too.  *See United States v. Hockenberry*, 730 F.3d 645, 660 (6th Cir. 2013) (explaining officers appropriately exercised their discretion when impounding a vehicle that was parked on a public street, the driver of the vehicle had a suspended license, and the owner of the vehicle did not have a valid license); *Snoddy*, 976 F.3d at 634.

Defendant's argument that the police had no intention to tow the vehicle until after the firearm was found is belied by the record.  ECF No. 34 at PageID #: 109.  During the Suppression Hearing, Officer Short testified that the decision to tow the vehicle was reached after he ran its license plate and found that its registration had been expired since May of 2020. Before the search, Officer Short can be heard *via* a video recording recounting events accounting for the tow.  Additionally, the vehicle was in a single lane driveway, blocking in several cars.

6

(4:23-CR-344)

Deciding to tow the vehicle was well within Officer Short's legal discretion. Therefore, the Court finds that Officer Short's decision to impound the car and perform an inventory search was objectively justifiable.

### B. Criteria for Inventory Search

"Officers are required to follow 'standardized criteria . . . or established routine'" to ensure that inventory searches are not conducted with unfettered discretion or as a ruse to discover incriminating evidence. *Hockenberry*, 730 at 659 (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)). "Police departments have wide latitude in devising such regulations, . . . but some parameters are necessary so that the scope of the search does not fall to roadside discretion." *United States v. Alexander*, 954 F.3d 910, 916 (6th Cir. 2020). When considering the comprehensiveness of an inventory list, "an officer's use of discretion in implementing agency guidelines regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment." *United States v. Kimes*, 246 F.3d 800, 805 (2001). In *Kimes*, the Sixth Circuit explained that a standard policy of "listing only 'valuable' items is not impermissible, and neither is a measure of flexibility regarding the implementation of that policy." *Kimes*, 246 F.3d at 805.

In this case, the Government submitted the YPD's written policy for conducting administrative inventory as an exhibit. The policy explains the purpose of an administrative inventory and how the inventory should proceed. *See* Gov. Ex. 1. The policy contains standardized criteria for what officers can and cannot search. *Id.* The policy instructs officers to list "all items of value." *Id.* Officer Short followed this procedure. He completed the inventory of areas accessible to him. In the Towed Car Report, Officer Short listed certain items of value

7

(4:23-CR-344)

found, including a bag of change and a muffler in bed.[6]  See Gov. Ex. 7.  Accordingly, the Court finds that the inventory policy is reasonable and that the search was conducted in accordance with the policy.

   3. **Inevitable Discovery**[7]

"[P]roof that contraband would have been detected in 'an inventory search that would inevitably follow seizure of a car' is sufficient to invoke the inevitable discovery exception to the exclusionary rule."  Kimes, 246 F.3d at 804  (quoting United States v. Kennedy, 61 F.3d 494, 498 (6th Cir. 1995)).  As earlier indicated, Defendant was driving an unregistered, and therefore, illegal car.  Stated differently, regardless of whether Officer Short could see Defendant's brake lights, once the officer discovered the truck was unregistered,[8] seizure *via* tow was the only rational response.  See, e.g., Kimes, 246 F.3d at 804  (finding the knives on the front seat of the truck would inevitably have been discovered in an inventory search conducted in connection with the removal of the vehicle illegally parked).  YPD, like most other municipal police departments, do not tow a vehicle without first conducting an inventory of its contents.  As Officer Short testified, that inventory is performed for officer safety as well as for the property

---

[6] The list is certainly not of every item observed in the truck.  During the hearing, Defendant's counsel questioned Officer Short about not having listed CD's found inside the truck.  Neither the law nor the YPD policy defines "of value" relative to the sort of inventory list required.  In this case, that the CD's are not listed in the inventory was within Officer Short's discretion and has no effect on the Court's legal analysis.

[7] This theory is usually presented by the government and sustained when a court determines, "viewing affairs as they existed at the instant before the search, what would have happened had the unlawful search never occurred." United States v. Kimes, 246 F.3d 800, 804 (6th Cir. 2001) (citations omitted). In this case, the Court considers, by a preponderance of evidence, what would have happened absent the allegedly illegal traffic stop prompted by missing brake lights.

[8] This circumstance was exacerbated by Defendant having pulled the truck into a driveway blocking in several cars.

8

(4:23-CR-344)

owner's benefit. At some point, after Defendant was stopped, that illegal truck was going to be inventoried and towed. The loaded firearm would then have been found. Therefore, in addition to the well taken arguments made by the Government, the Court finds that the theory of inevitable discovery supports the search and seizure of the loaded firearm.

Even without this final theory, based on the record, the warrant for and actual DNA evidence collected were not the result of an illegal search.

### IV. Conclusion

The Court denies Defendant's Motion to Suppress (ECF No. 29) in its entirety.

IT IS SO ORDERED.

| | |
|---|---|
| April 8, 2024 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

9